**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

JAMES R. POSTON, JR., et al.,

          Plaintiffs,

v.                                  CIVIL ACTION NO.  5:07-cv-00757

JOHN BELL CO. INC., et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion to Dismiss or Stay [Docket 6]. For the reasons stated below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

*I. BACKGROUND*

This action arises out of an agreement between Plaintiffs James and Melanie Poston and Defendant John Bell Co., Inc. (BellCo) whereby the parties entered into a joint venture in which Plaintiffs agreed to contribute two pieces of land in the community of the Greenbrier Sporting Club, Lot 2 and Lot 49, and BellCo agreed to provide the management, labor, and materials for the construction of homes on those properties. (Docket 1 at 4.) The home on Lot 49 was to be for a third-party, and the construction on Lot 2 was to be a custom home for Plaintiffs and serve as a model home for BellCo. (Docket 1 at 4; Docket 7 at 2.) The profits that Plaintiffs acquired from the sale and construction of the home on Lot 49 were to be applied to the construction of the custom home on Lot 2. (Docket 7 at 2.)

Lot 49 was sold before construction began on the property, and therefore, according to the contract, the net profits were to be divided equally between Plaintiffs and BellCo with Plaintiffs' profit being applied to the construction of the custom home. (Docket 1 at 4.) However, after construction began on Lot 2, Plaintiff terminated BellCo and contracted with another builder to complete the home. (Docket 7 at 3.) Upon its termination, BellCo presented Plaintiffs with the unpaid charges on the Lot 2 construction. (Docket 7 at 3.) Plaintiffs refused to pay the total amount because BellCo allegedly incorrectly figured the amount of net profit on the sale of Lot 49 by wrongfully including costs that decreased the amount of credit Plaintiffs were to receive toward the construction of the home on Lot 2. (Docket 1 at 5.) Further, Plaintiffs allege that during construction of the home on Lot 2, BellCo improperly charged Plaintiffs for construction costs under the contract. (Docket 1 at 5.)

Because Plaintiffs did not pay BellCo the amount it requested, BellCo filed a mechanic's lien against Lot 2 in March 2007. A material supplier, S.J. Neathawk Lumber, Inc. (Neathawk), also filed a mechanic's lien against Lot 2. In accordance with West Virginia law, BellCo then brought suit against Plaintiffs on September 14, 2007 in the Circuit Court of Greenbrier County, West Virginia. BellCo also named Neathawk as a defendant in that suit. (Docket 7 at 3.)

Plaintiffs were served with copies of BellCo's complaint on October 22, 2007, and filed their answer on November 21, 2007. In their answer, they denied liability and asserted counterclaims against BellCo. Specifically, the counterclaims seek judgment against BellCo for "breach of contract, slander of title, and for any other such relief as the [state court] deems appropriate under the circumstances." (Docket 6 at 23.)

Meanwhile, Neathawk also filed suit to enforce its mechanic's lien for materials installed upon Lot 2. Neathawk named Plaintiffs and BellCo as defendants. Also on November 21, 2007, Plaintiffs filed their answer denying liability and asserting crossclaims against BellCo. The crossclaims include a request for judgment against BellCo for "breach of contract, contribution, and/or indemnification and for any other such relief as the [state court] deems appropriate under the circumstances." (Docket 6 at 32.) Plaintiffs state in their crossclaims that any damages Neathawk incurred were the "sole proximate result of tortuous (sic) conduct by . . . [BellCo]." (Docket 6 at 30-31.) Defendants indicate that BellCo moved to have these state actions consolidated, and thus the Court will refer to the actions collectively as the state court action.

On the same day Plaintiffs filed their answers, counterclaims, and crossclaims in state court, they initiated this diversity action. In their Complaint [Docket 1], Plaintiffs name BellCo, John W. Bell III in his official capacity as the president of BellCo, John W. Bell IV, in his official capacity as the vice president of BellCo, Richlands Development Company, LLC (Richlands Development), and Richlands Properties, LLC (Richlands Properties) as defendants.[1] They allege that BellCo is liable for breach of contract and slander of title, and that all Defendants are liable for conversion, common law fraud and misrepresentation, and breach of fiduciary duty. (Docket 1 at 7-12, ¶¶ 37-61.)

Defendants filed the instant motion to dismiss on December 20, 2007, arguing that this Court should either dismiss or stay this action "pursuant to the abstention doctrine articulated in *Colorado*

---

[1] John W. Bell III and John W. Bell IV are allegedly members and agents of Richlands Development. Richlands Properties either served as a management company for Richlands Development or acted as an agent for Richlands Development. (*See* Docket 1 at 2-3, ¶¶ 3-12.)

3

*River Water Conservation Dist. v. United States*, 424 U.S. 800 [] (1976)." (Docket 7 at 7.) Plaintiffs responded and Defendants replied. Accordingly, the matter is ripe for the Court's consideration.

## II. DISCUSSION

### A. Abstention under Colorado River

Defendants contend that application of the Supreme Court's decision in *Colorado River* requires this Court to stay or dismiss this case, pending the outcome of the state court action in the Circuit Court of Greenbrier County.[2] Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]" *McClellan v. Carland*, 217 U.S. 268, 282 (1910). "[O]ur dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 340 (4th Cir. 2002). In fact, "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Gannett Co. v. Clark Constr. Group, Inc.*, 286 F.3d 737, 741 (4th Cir. 2002) (quoting *Colorado River*, 424 U.S. at 813).

"For a federal court to abstain under the *Colorado River* doctrine, two conditions must be satisfied." *Gannett Co.*, 286 F.3d at 741. First, "there must be parallel proceedings in state and federal court." *Id.* Next, "'exceptional circumstances' warranting abstention must exist." *Id.*

### 1. Parallel Proceedings

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union*, 946 F.2d 1072, 1073 (4th Cir. 1991); *Holland v. Hay*, 840 F. Supp. 1091, 1102 (E.D. Va. 1994) ("The proceedings need not be identical,

---

[2] "On a motion to dismiss, the court considers plaintiffs' allegations as true, and views the record as a whole in the light most favorable to them." *Holland v. Hay*, 840 F. Supp. 1091, 1095 (E.D. Va. 1994) (citing *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991)).

4

but rather substantially similar."). "Factual overlap between two proceedings, however, does not necessar[ily] mean the suits are parallel." *Nat'l Textiles v. Daugherty*, 250 F. Supp. 2d 575, 577-78 (M.D.N.C. 2003) (citing *New Beckley Mining Corp.*, 946 F.2d at 1074). "Nor are suits parallel when the remedies sought and the legal theories advanced differ." *Id.* Actions may be virtually identical, but not parallel "if they raise different issues or seek different remedies." *Covance Labs., Inc. v. Orantes*, 338 F. Supp. 2d 613, 616 (D. Md. 2004).

Defendants contend that this case and the state court action are substantially the same because BellCo is the sole counterclaim and crossclaim defendant in the state court action and is the primary and fundamental defendant here. According to Defendants, the fact that there are other defendants and additional claims in the federal case is immaterial because the additional defendants are secondary to BellCo as their liability is derivative of its liability. Similarly, the other claims advanced in Plaintiffs' federal complaint are all central to Plaintiffs' breach of contract cause of action, which is present in the state court action.

Plaintiffs maintain that the proceedings are not parallel because the state court case involves the enforcement of a mechanic's lien placed on Lot 2 and the issue of whether the lien is appropriate or an attempt to slander Plaintiffs' title to that property. However, according to Plaintiffs, the federal diversity action involves the construction on both Lot 2 and Lot 49, along with additional parties and claims. Plaintiffs cite *Gannett Co.* for the proposition that a state action to enforce a mechanic's lien is not parallel to a federal court action for breach of contract because of the "different requisites of proof." 286 F.3d at 742.

Contrary to Plaintiffs' argument, the Fourth Circuit's decision in *Gannett Co.* is distinguishable from the case at hand because in *Gannet Co.* there were no counterclaims or

5

crossclaims by the property owner against the lien holder for breach of contract or slander of title in the state court lien action. In fact, the court recognized this when it stated, "We note that it appears that the equity court in the State Lien Action possesses the power to resolve the breach of contract issues, in which case the State Lien Action arguably would be parallel to the Federal Contract Action, but neither Clark nor Gannett has sought such relief in the State Lien Action." *Gannett Co.*, 286 F.3d at 743 n.4.

Plaintiffs here have sought such relief in the state court action. Unlike the plaintiff in *Gannett Co.*, Plaintiffs here filed counterclaims and crossclaims that raised the breach of contract and tort claims in state court, thus providing that court with an avenue to adjudicate those matters. Accordingly, because those claims are raised in the state court action, *Gannett Co.* is inapposite and the circuit court in this case has before it the necessary claims to resolve nearly all the issues between Plaintiffs and BellCo.

Moreover, the fact that other parties are added to the federal action is not dispositive. "[T]here is no indication from [Fourth Circuit case law] that the simple addition of another defendant will destroy parallelism." *Flanders Filters, Inc. v. Intel Corp.*, 93 F. Supp. 2d 669, 672 (E.D.N.C. 2000). Plaintiffs could have filed a third-party complaint against Defendants Richlands Development, Richlands Properties, John W. Bell III, and John W. Bell IV in state court as there is no question that the circuit court would have jurisdiction over those defendants. *See generally Baseline Sports, Inc. v. Third Base Sports*, 341 F. Supp. 2d 605, 609 (E.D. Va. 2004). BellCo, the principle defendant, is named in both proceedings and Plaintiffs assert the virtually same claims against it in both proceedings. While Richlands Development, Richlands Properties, John W. Bell III, and John W. Bell IV are not named in both suits, their interests are "closely aligned[]" with

BellCo.  *Nat'l Textiles*, 250 F. Supp. 2d at 578.  John W. Bell IV is allegedly the incorporator, a member and agent of Richlands Development and is the vice president of BellCo.  John W. Bell III is allegedly the incorporator and President of BellCo and a member and agent of Richlands Development.  According to Plaintiffs' Complaint, Richlands Properties either served as a management company for Richlands Development or acted as an agent for Richlands Development.  Thus, "[w]hile the parties in these proceedings are not exactly the same, they are nevertheless substantially the same."  *Nat'l Textiles*, 250 F. Supp. 2d at 578 (holding that proceedings were parallel when the interests of different defendants not present in both actions were "closely aligned").

Likewise, adding "additional claims dependent upon the determination of [the] action[] pending before state court[], will not destroy parallelism."  *Flanders Filters, Inc.*, 93 F. Supp. 2d at 672 (citing *N.C. Life & Accident & Health Ins. Guar. Ass'n v. Alcatel*, 876 F. Supp. 749, 755 (E.D.N.C. 1995)).  Despite the additional claims set forth in this action, the remedies requested in both proceedings are substantially similar: Plaintiffs want Defendants to pay for the damages they incurred as a result of BellCo and its agents' performance (or lack thereof) on the contract and tortious conduct.  Should BellCo be found liable in either court based on Plaintiffs' contract and tort claims, their monetary remedies will be the same.

Finally, it is important to note that although Plaintiffs alleged BellCo was liable for its "tortious" conduct in the state action, they did not assert specifically their claims for breach of fiduciary duty, common law fraud and misrepresentation, or conversion in state court when they clearly could have.  Their counterclaims and crossclaims were filed on the same day as their federal complaint when all the facts and potential parties and claims were known to them.  By advancing

only some of their claims at that time, they have shown that the later filed state court lawsuit may have been reactive or vexatious -- an issue which will be discussed in more detail *infra*.

Accordingly, because the proceedings are substantially similar, they are parallel for purposes of the *Colorado River* analysis.

### 2. The "Exceptional Circumstances" Test

Although not a "rigid test, the Supreme Court has recognized several factors that are relevant in determining whether a particular case presents such exceptional circumstances." *Gannett Co.*, 286 F.3d at 741. These factors include: "(1) jurisdiction over the property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal law is implicated; and (6) whether the state court proceedings are adequate to protect the parties' rights." *Id*. (citing *Colorado River*, 424 U.S. at 813; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983)). Another consideration, which other cases have noted as recognized by the Supreme Court and Fourth Circuit, is "whether the later-filed lawsuit is reactive or vexatious." *Holland*, 840 F. Supp. at 1101 (citing *Moses H. Crone*, 460 U.S. at 17-18 n.20; *McLaughlin v. United Va. Bank*, 955 F.2d 930, 935 (4th Cir. 1992)).

Importantly,

> [i]n the context of *Colorado River* abstention . . . it is inaccurate to state that [a] factor is of no weight. As the *Moses H. Cone* Court emphasized, 'our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," . . . to justify the surrender of jurisdiction.' Thus, although [a] factor does not weigh heavily in favor of exercising federal jurisdiction, it counsels against abstention.

*Gannett Co.*, 286 F.3d at 748 n.10 (citations omitted).

With these principles in mind, the Court will analyze each of the factors as applied to this case to determine whether "exceptional circumstances" exist.

*a.     Jurisdiction Over The Property*

Defendants argue that this factor weighs in favor of abstention because Plaintiffs filed an *in rem* mechanic's lien action in state court resulting in that court's jurisdiction over the property in question -- Lot 2. However, Plaintiffs' counterclaims and crossclaims in state court as well as their claims in this Court are *in personam* proceedings for money damages. Accordingly, none of the claims in federal court concern the lien; therefore this factor is of no importance and weighs against abstention. *See Gannett Co.*, 286 F.3d at 747 n.10.

*b.     Inconvenience of the Federal Forum*

"[C]onvenience refers to the 'relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses." *Holland*, 840 F. Supp. at 1100 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

There is no indication that the federal forum is significantly less convenient to the parties than the state court forum because "both courts are located here in West Virginia." *United Serv. Prot. Corp.*, 354 F. Supp. 2d at 656 (finding this factor to be inapplicable when the state court and federal court were in West Virginia). However, the Court does note that the state court in Greenbrier County, where Defendants reside and have their principal place of business, is approximately fifty miles from Beckley. Thus, although this is not a significant burden on Defendants, it still is more of a burden than the state court forum and therefore this factor weighs slightly in their favor.

*c.     Order in which Jurisdiction was Obtained*

9

"The Supreme Court has emphasized that the order of filing should be viewed pragmatically, meaning that 'priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" *Gannett Co.*, 286 F.3d at 747-48 (quoting *Moses H. Cone*, 460 U.S. at 21); *see also Baseline Sports, Inc.*, 341 F. Supp. 2d at 610 (holding that this factor weighed "slightly in favor of abstention" when neither case progressed very far, but discovery commenced in the state court action). "As a matter of comity, the more the state has invested its time and resources into the proceedings, the less appropriate it is for a federal court to intervene and disrupt those proceedings." *United Serv. Prot. Corp. v. Lowe*, 354 F. Supp. 2d 651, 657 (S.D. W. Va. 2005) (Goodwin, J.).

The state court action was clearly filed first on September 14, 2007, while the federal court action was not filed until November 21, 2007, and Plaintiffs' argument that the federal complaint was filed on the same day as the state answers, counterclaims, and crossclaims is of no particular importance. Nevertheless, at the time Defendants filed this motion, the state court action had not advanced much further than this case and there is no additional evidence in the record to suggest that it has gone any further. As such, this factor does not weigh in favor of abstention.

*d.  Avoidance of Piecemeal Litigation*

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Gannett Co.*, 286 F.3d at 744 (quoting *Am. Int'l Underwriters, Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)). This factor "has been deemed the most important of the *Colorado River* factors." *Baseline Sports, Inc.*, 341 F. Supp. 2d at 610 (citing *Holland*, 840 F. Supp. at 1101). [T]he Fourth Circuit has stated that "[t]he threat of inconsistent results and the judicial inefficiency inherent in parallel breach of contract

10

litigation, however, are not enough to warrant abstention." *Gannett Co.*, 286 F.3d at 744. "Instead, for abstention to be appropriate, retention of jurisdiction must create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly ill-suited for resolution in duplicate forums." *Id.* "The Court in *Colorado River* stated that where there is contemporaneous exercise of concurrent jurisdiction, the court must consider principles of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Baseline Sports, Inc.*, 341 F. Supp. 2d at 610 (quoting *Colorado River*, 424 U.S. at 817).

In *Baseline Sports, Inc.*, the court noted that "[a]lthough 'judicial diseconomy alone does not justify abstention,'" this factor weighs strongly in favor of abstention when "the judicial diseconomy is the product of a reactive, vexatious lawsuit." 341 F. Supp. 2d at 610 (citation omitted). The court emphasized that "[s]uch disregard for judicial time and resources should not, and need not, be tolerated." *Id*.

There is no doubt that the issues raised in both proceedings are virtually the same and that the efforts of both courts will be duplicated thereby making different results a significant possibility and the waste of judicial resources a certainty. While the Fourth Circuit has determined that a waste of valuable judicial resources is not enough to justify abstention, given the vexatious and reactive nature of the action,[3] this case is ill-suited for resolution in duplicate forums. Because the judicial diseconomy is the product of a reactive, vexatious lawsuit, the circumstances in this case go beyond those typical in parallel litigation. Additionally, like the proceedings in *Baseline Sports, Inc.*, "this duplicative litigation will no doubt present serious *res judicata* problems for either this court or the

---

[3] *See infra* II, f.

[state] court, depending on which court first reaches the merits of the dispute." 341 F. Supp. 2d at 610-11 (citing *Beck v. CKD Praha Holding*, 999 F. Supp. 652, 657 (D. Md. 1998) (abstaining in the face of parallel proceedings because of *res judicata* concerns). In other words, denial of Defendants' motion in its entirety will result in two separate lawsuits over essentially the same issues. *See Meyers v. Levinson*, No. 4:02-cv-9, 2005 U.S. Dist. LEXIS 42799, at *33 (E.D. Va. July 26, 2005). Thus, considering the principles of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation[,]" *Colorado River*, 424 U.S. at 817, this factor weighs in favor of abstention.

> e. *Presence of a Federal Question and Adequacy of the State Court Proceedings to Protect Parties' Rights*

When federal law provides the rule of decision on the merits, this factor weighs in favor of exercising jurisdiction. *E. Assoc. Coal Corp.*, 272 F. Supp. 2d at 602; *Moses H. Cone*, 460 U.S. at 26 (stating that "the presence of federal law issues must always be a major consideration weighing against surrender[]"). Although "[t]he presence of a federal question would strongly encourage the court not to abstain, . . . the mere absence of a federal question does not bear any weight." *Baseline Sports, Inc.*, 341 F. Supp. 2d at 611.

The Fourth Circuit has noted that "the presence of state law and the adequacy of state proceedings can be used only in 'rare circumstances' to justify *Colorado River* abstention." *Gannett Co.*, 286 F.3d at 746. In fact, "[t]hat state law is implicated in [a] breach of contract action 'does not weigh in favor of abstention, particularly since both parties may find an adequate remedy in either state or federal court.'" *Id.* (citing *Luksch*, 887 F.2d at 498). This is so because "in a diversity case . . . courts regularly grapple with questions of state law, and abstention on the basis of the

presence of state law, without more, would undermine diversity jurisdiction." *Id.* (holding that "the district court abused its discretion by concluding that the presence of Virginia law and the fact that the dispute adequately could be litigated in state court militated in favor of abstention[]").

Defendants argue that the facts in the present case strongly favor abstention because there is no federal question at issue and Plaintiffs' claims are all state law claims. Further, according to Defendants, absent a federal question the concern of wise judicial administration, conservation of judicial resources, and the comprehensive disposition of litigation, are even more compelling here than in *Colorado River*.

Defendants, however, fail to acknowledge the Fourth Circuit's mandate in *Gannett Co.* with respect to this factor. If there is a federal question, then this factor weighs strongly in favor of exercising jurisdiction, but if there is not, then it is given no weight, and as mentioned above, when factors are given no weight, they lean toward exercising jurisdiction. *Gannett Co.*, 286 F.3d 746-47, 748 n.10. Simply put, even if a federal question is not implicated, this factor still weighs against abstention unless there is presence of "rare circumstances" typically not found in a breach of contract action. The absence of a federal question in this case does not support Defendants' argument.

With respect to "assessing the adequacy of the state court forum, a federal court must determine whether the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Goldentree Asset Mgmt., L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589, 595 (S.D.N.Y. 2006) (quoting *Moses H. Cone*, 460 U.S. at 28).

13

This factor does weigh in favor of abstention. All of the defendants in this action can be added as parties to the state court action and all claims can be asserted in that court. In other words, the circuit court can provide full relief and is therefore an adequate vehicle for the complete and prompt resolution of the issues between Plaintiffs and Defendants. The mechanic's lien issue is before that court and can be analyzed and adjudicated contemporaneously with the other related claims. Finally, there is no indication that relief would not be timely.

Thus, while the absence of a federal question does not weigh in favor of abstention, the adequacy of the state court proceedings does.

### f. *Reactive Nature of the Federal Suit*

In *Moses H. Cone*, the Supreme Court stated that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*." 460 U.S. at 17 (dictum). If a district court finds "bad faith on the part of plaintiff, or if the federal action was filed 'in order to sidestep the [state] court's jurisdiction and reverse the roles of the parties,' a stay or dismissal would be warranted 'as a means to deter vexatious use of the courts.'" *Baseline Sports, Inc.*, 341 F. Supp. 2d at 611 (quoting *Holland*, 840 F. Supp. at 1101). As mentioned earlier, when judicial diseconomy is the product of a reactive, vexatious lawsuit, the "disregard for judicial time and resources should not, and need not, be tolerated." *Baseline Sports, Inc.*, 341 F. Supp. 2d at 610.

It is apparent that this diversity case is a reaction to the state court proceeding because Plaintiffs' counterclaims and crossclaims against BellCo were all filed after BellCo filed its complaint and on the same day as Plaintiffs' initiated this action. Therefore, it is clear that Plaintiffs knew all the facts and potential parties that would serve as the basis for their federal complaint at

that time, and had they wanted to litigate this case in federal court, they could have simply included all of their claims in that complaint. Instead, they chose to divide the claims and defendants between two different courts, which unnecessarily and vexatiously multiplied the proceedings and the use of judicial resources in both courts. This is not a case where additional parties, over whom the state court would not have jurisdiction, were discovered through the course of discovery in state court and not known until a later date. Rather, Plaintiffs had all the information necessary to proceed in one court yet chose to pursue related claims simultaneously in two courts duplicating the burdens of litigation.

Furthermore, Plaintiffs' breach of contract action accrued before BellCo filed its mechanic's lien in state court, and it was not until BellCo made this filing in state court that Plaintiffs initiated this diversity action. That lends support to the conclusion that this suit was a reaction to the state court complaint filed by BellCo. Moreover, because of the multiple proceedings on substantially similar issues, Plaintiffs can elect to dismiss whatever claims do not look to be going forward in their favor and proceed in the other forum -- an option which would not be available to them had they not filed this action.

Accordingly, "[s]ince the court finds that this lawsuit was filed vexatiously and in reaction to the pending [state court] suit, this factor weighs strongly in favor of abstention." *Baseline Sports, Inc.*, 341 F. Supp. 2d at 612.

### g. *Balancing of Factors*

In summary, "the decision whether to dismiss a federal action because of a parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important

15

factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16.

Despite the presumption already weighing towards exercising jurisdiction, based on an analysis of the relevant factors, the Court **FINDS** that this case possesses the "exceptional circumstances" necessary to surrender jurisdiction.

Specifically, given the reactive nature of this suit, the "disregard for judicial time and resources should not, and need not, be tolerated." *Baseline Sports, Inc.*, 341 F. Supp. 2d at 610, 612 ("The reactive and vexatious nature of this lawsuit is by itself an exceptional circumstance which, coupled with the court's finding that the state and federal proceedings are parallel, justifies abstention under *Colorado River*."). Additionally, the adequacy of the state court proceedings, in particular its unique ability to adjudicate and resolve all of the issues in this dispute, lends itself to abstention. Moreover, the state forum is somewhat more convenient for the parties than this Court. Finally, the most important factor of the analysis, the avoidance of piecemeal litigation, favors surrendering jurisdiction to the state court.

Importantly, although some factors are inapplicable and therefore counsel in favor of exercising jurisdiction, none of the *Colorado River* factors weigh heavily toward that course of action. Accordingly, like the court in *Baseline Sports, Inc.*, the Court will abstain from hearing this case under *Colorado River*.

  *B.*  *Dismissal versus Stay*

"[A] stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine." *La Duke v. Burlington N. R. Co.*, 879 F.2d 1556, 1561-62 (7th Cir. 1989). The Seventh Circuit noted that "[a]

16

stay, in contrast to a dismissal, allows the federal court to retain jurisdiction over the federal action in case the state litigation 'washes out' for some reason and fails to reach its anticipated end of a final decision on the merits." *Id*. "[A] stay has the advantage of bringing the federal action back before the same federal judge that had previously considered the case should a determination of the preclusive effect of state-court decisions be necessary. It protects the rights of all the parties without imposing any additional costs or burdens on the district court." *Id.* (citations omitted).

After considering the alternatives, the Court finds the Seventh Circuit's language persuasive and will therefore **STAY** this action until the state court proceeding is completed. The parties are **DIRECTED** to inform the Court once the state court action has been resolved.

### *III. CONCLUSION*

For the reasons stated above, Defendants' Motion to Dismiss or Stay [Docket 6] is **GRANTED IN PART** and **DENIED IN PART**. To the extent that Defendants request that this Court abstain from hearing this case, Defendants' motion is **GRANTED**, and the Court **ORDERS** that this action be **STAYED**. Consequently, Defendants' motion to dismiss is **DENIED**. The Clerk is **DIRECTED** to place this case on the inactive docket. Further, the Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: August 27, 2008

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE